United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 5, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 06-30844
Summary Calendar

ROBERT P. DAIGLE,

Plaintiff-Appellant,

versus

DONALD MCCARTHY, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
(6:05-CV-00082-TLM-CMH)

Before DeMOSS, STEWART and PRADO, Circuit Judges.

PER CURIAM:[*]

Robert Daigle appeals the district court's judgment in favor of defendants. For the following

reasons, we affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

Daigle, a resident of Texas, filed a diversity suit in Louisiana federal district court against the

Diocese of Alexandria, Louisiana ("Diocese"), and Ronald McCarthy for claims relating to his alleged

---

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be published and is not
precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

sexual abuse as a child. McCarthy was a priest in Texas and working at a Louisiana summer camp when he met Daigle in 1955. Daigle alleges that following the summer camp, McCarthy and Legar Tremblay, a former priest at the Diocese, sexually assaulted him. Daigle was fourteen-years-old at the time.

Following the alleged incident, Daigle suffered from numerous psychological problems and began seeing a therapist. Daigle first recalled the assault in a 1990 counseling session but could not recall any specific information. After contacting officials with the Evergreen Parish (a division within the Diocese), where Tremblay had worked, Daigle learned Tremblay's name and that he was currently working for the Shreveport Diocese. Daigle then contacted Tremblay, who did not remember him.

Next, Daigle contacted a lawyer, who told him that he had a "fat chance" at prevailing in court against the Catholic church. Daigle then sent a letter to the Diocese bishop, other Catholic church officials, various media, family members, and Tremblay outlining his allegations, perpetrators, legal options, and requesting the church's help in his efforts towards holding his perpetrators legally responsible.[1] Over the next thirteen years, Daigle periodically called the Diocese requesting information and was rebuffed. In 2004, an auxilliary bishop told Daigle that Tremblay had been defrocked in 1986 because of other allegations of sexual abuse. Subsequently, Daigle confirmed McCarthy's identity using an old photograph.

Daigle then filed the instant suit in early 2005, alleging that the Diocese had "stonewalled" by refusing to provide him with any information for fifteen years following his therapy session and requests. Daigle argued that he needed specific information in order to receive sufficient treatment

---

[1]In his 1990 letter outlining his allegations, Daigle wrote: "Recently I spoke with a lawyer . . . . However, the attorney also said that the statute of limitations had expired. So any criminal recourse I might have is no more. This leaves me with the alternative of writing to you."

2

and that the Diocese was responsible. Daigle also alleged that his post-traumatic stress prevented him from specifically recalling McCarthy's identity until 2004 and that McCarthy was directly responsible for his alleged damages. After the district court set a scheduling order, Daigle filed a Motion to Compel Discovery, which was denied. The Diocese and McCarthy filed motions for summary judgment, arguing that Daigle's claims are prescribed under Louisiana law. Daigle then filed a Rule 56(f) Motion to Continue Summary Judgment. Following the Magistrate Judge's memorandum, the district court granted summary judgment for the defendants, holding that Daigle's claims were prescribed and dismissed his Rule 56(f) motion as moot. Daigle now appeals the summary judgment and Rule 56(f) rulings to this court.

## II. DISCUSSION

A.

This court reviews the grant of summary judgment de novo. *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 485 (5th Cir. 2001). This court also reviews the district court's determination of state law de novo. *Id.* This court applies, as the district court did, Louisiana's prescription law. Prescription in Louisiana is governed LA. CIV. CODE ANN. art. 3492.

Under Louisiana law, delictual actions, such as Daigle's, have a prescriptive period that commence one year "from the date injury or damage is sustained." LA. CIV. CODE ANN. art. 3492. There are four exceptions to liberative prescription under the doctrine of contra non valentem: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the proceedings which prevented the creditor from suing or acting; (3) where the defendant himself has done some act effectually to prevent the plaintiff from availing himself of his cause of action; (4) and

3

where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. *Hendrick v. ABC Ins. Co.*, 787 So. 2d 283, 290 (La. 2001).

Daigle argues that the district court ruling "evinces" error because it states that he bears the burden of proving prescription was suspended. Daigle argues that the only burden of proof at the summary judgment stage is to prove that a dispute exists. In cases of prescription, however, if defendants are successful at demonstrating one year has passed between the tortious acts and the filing of the suit, "then the burden shifts to the plaintiff to prove an exception to prescription." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002) (citing *Miley v. Consol. Gravity Drainage Dist. No. 1*, 642 So. 2d 693, 696 (La. Ct. App. 1994)).

Daigle's lawsuit, commencing nearly fifty years after the assault, is prescribed on its face. Therefore, he bears the burden of proving that the applicable prescription period has been suspended, interrupted, or renounced. *Id*. The Louisiana Supreme Court has held:

> Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
> When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.

*Jordan v. Employee Transfer Corp.*, 509 So. 2d 420 (La. 1987).

The district court held that, in Daigle's case, the prescription period began to run in 1990 after he first recalled the 1955 assault in a therapy session. We find no legal error in that assessment. Daigle argues that he did not have the evidence to support a claim until he received additional information from the auxiliary bishop in 2004 and that the Archdiocese's refusal to provide him any

4

information concerning Tremblay until 2004 was in and of itself a "tort and cause of damage." This, however, would not rebut the conclusion that Daigle was "reasonably" aware of his legal claims in 1990. The appropriate focus is not when a plaintiff develops a strong legal case but when he has a sufficiently reasonable knowledge of his legal options. "Contra non valentem does not suspend prescription when a litigant is perfectly able to bring its claim, but fails or refuses to do so." *Terrebonne Parish Sch. Bd.,* 290 F.3d at 885. Daigle also argues that he was not aware of McCarthy's identity until 2004; however, in his 1990 letter he identifies McCarthy as Tremblay's "seminarian driver" and described him as "red haired" in a 1990 therapy session.

Therefore, we find no error in the district court's determination that Daigle had sufficient information in 1990 to seek out the Archdiocese and McCarthy. The case Daigle relies upon for the argument that policy concerns mitigate against relying on general prescriptive statutes for situations involving sexual abuse is inapposite. That case, *DeLonga v. Diocese of Sioux Falls*, 329 F. Supp. 2d 1092 (D. S.D. 2004), dealt with a law exempting sex crimes from the South Dakota statute of limitations for civil actions. Because of "coping mechanisms associated with victims of sexual abuse which may hinder such victims from making the causal connection between their abuse and problems suffered later in life," many states have enacted such statutes. *Id.*; *see also Roman Catholic Bishop of Oakland v. Superior Court*, 128 Cal. App. 4th 1155 (Cal. Ct. App. 2005). Louisiana, however, has no such statute and Daigle's allegations are not exempted from the prescription statute.

B.

Rule 56(f), FED. R. CIV. P., provides non-movants with an important tool "to keep open the doors of discovery in order to adequately combat a summary judgment motion." *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992). The rule authorizes a district court to

"order a continuance to permit affidavits to be taken or depositions to be taken or discovery to be had," if the non-movant files affidavits showing that he or she "cannot for reasons stated present by affidavit facts necessary to justify the party's opposition." Rule 56(f). Although motions under Rule 56(f) "are favored and should be liberally granted," the denial of such a motion is reviewed for abuse of discretion. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 605-06 (5th Cir. 2001). A non-movant seeking relief under Rule 56(f) must "show (1) why she needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *Id.* at 605. The non-movant cannot "simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305 (5th Cir. 2004).

We find no abuse of discretion in the district court denying Daigle's Rule 56(f) motion to continue discovery as moot. None of the material Daigle sought, including interrogatories and documents from the Diocese and McCarthy's medical records, would have supported his claim that he did not have sufficient information in 1990 to pursue the defendants.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.

AFFIRMED.